UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REINALDO GLOVER,

    Plaintiff,

vs.

CAPT. CHRISTOPHER CAMACHO, CAPT. MARIA BANKS, SGT. RALYNNE FISHER, and SGT. JAMIE GUESS, individually,

    Defendants.

Case No. 3:24-cv-1107-BJD-SJH

**SECOND AMENDED COMPLAINT FOR DAMAGES**

Plaintiff REINALDO GLOVER sues all Defendants and alleges:

### Jurisdiction And Venue

1. Plaintiff sues pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of rights. The Court has subject matter jurisdiction per 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose.

3. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

### Parties

4. At all times material hereto, Plaintiff REINALDO GLOVER was an inmate in the custody and care of the Florida Department of Corrections (FDC).

5. At all times material hereto, CHRISTOPHER CAMACHO was a Captain at Columbia Correctional Institution. He is sued individually.

6. At all times material hereto, MARIA BANKS was a Captain at Columbia Correctional Institution. She is sued individually.

7. At all times material hereto, SGT. J. GUESS was a Sergeant at Columbia Annex. He is sued individually.

8. At all times material hereto, SGT. RALYNNE FISHER was a Sergeant at Columbia Annex. She is sued individually.

9. At all times material hereto, each of the above-named Defendants was acting under color of law.

## Common Allegations of Fact

**A. July 4, 2024, Incident at Columbia Correctional Institution Annex**

10. On July 4, 2024, Plaintiff Inmate Reinaldo Glover was walking back from breakfast at Columbia Annex when he was tackled to the ground by an officer and taken to a holding cell in the confinement Dorm, Dorm N.

11. Sgt. Fisher deployed chemical agents on Glover as he sat in the holding cell because she claimed he was striking a light fixture, which Glover denies.

12. At the time Sgt. Fisher initiated the spray, Plaintiff was actually sitting on his bunk and was not engaged in any action to damage state property.

13. The use of force was not undertaken to stop him from damaging property.

14. Plaintiff admits he failed to submit to hand restraints in frustration with the fact that no one would take note of the physical evidence that showed he was not sprayed by Fisher while standing on a bench banging on a light fixture.

2

15. Captain Maria Banks was not present during the initial deployment of chemical agents but approved two more rounds of OC Spray for failing to cuff up.

16. At this point, Sgt. Jamie Guess was present and gave the orders to cuff up or be sprayed with OC Spray again.

17. Subsequently, Plaintiff also received one round of CS Gas, a stronger and more dangerous chemical agent commonly avoided in closed spaces.

18. After being hit with chemical agents, Glover was ordered to "cuff up" to be taken out of the cell. Glover was afraid because he didn't know what was going on. Officers present referred to payback for an incident at Suwannee in January 2025 that was being investigated by the Office of Inspector General.

19. Glover declared a psychological emergency. Glover was an S-3 psych grade and was entitled to crisis intervention (C.I.T.) but no supervisor called a mental health professional for C.I.T. but simply continued with consecutive uses of force.

20. About 10:43 a.m., Glover again refused to submit to hand restraints. Sgt. Guess called for another application of chemical agents, (three 1-second blasts).

21. About ten minutes later, Plaintiff again declines to cuff up and is sprayed with another round of chemical agents by Sgt. Fisher, prompted by Sgt. Guess.

22. Around 10:58 a.m., Capt. Camacho, who was then assigned to the Main Unit and not the Annex, comes to the cell front and tells Plaintiff that they are about to cell extract him and he, Camacho, will be on the cell extraction team.

23. A voice off camera states they were unable to reach a Duty Warden to get

approval for the cell extraction but they are going ahead with it.

24. Plaintiff tells Camacho that he will lie face down on the floor with his hands behind his back but declines to put his hands through the food slot.

25. The holding cell door is opened and the team entered: They were Sgt. Jesse Williams. Sgt. Phillip Parrish, Sgt. Dylan Mudd and Sgt. Kenneth Stengel.

26. On video, Plaintiff appears to be lying down on the floor face down. There is the sound of the handcuffs engaging and a cry of pain by Plaintiff.

27. Plaintiff again asks to speak to mental health and says that he feels like killing himself. Plaintiff is carried out in a four-man carry.

28. The team exits the cell with Plaintiff suspended by his ankles and elbows, straining his wrists, wrenching his shoulders, eliciting more cries of pain.

29. Glover is moved to Cell 3102, where he attempts to hang himself. Officer Randy Dauzat ordered him to cease his efforts and sprays him with O.C. Spray. Plaintiff does not allege that this action was a constitutional violation.

30. At this point, the camera suddenly turns off. When the camera comes on again, the door to Cell 3102 is open and there is a partial view of several officers struggling with Plaintiff who cries out that someone is gouging his eye. A spit mask is placed on his head though he hadn't spat or tried to spit on anyone.

31. Again, Plaintiff is being roughly four-man carried although the officers have access to a rolling restraint chair. Officers are holding his arm under his elbow, wrenching his shoulder upwards. Wrist and leg restraints are too tight.

4

32. When leg restraints are tight around the ankle, they become unbearable when the prisoner tries to put weight on his feet and his tendons flex.

33. Plaintiff is carried to a hose outside one of the shower rooms. The hose is meant to clean the floors and the water is warm or hot. Decontamination showers must be cold because water that is warm or hot will open the pores and increase the sensation of the body being on fire caused by the chemicals.

34. An officer directs the hose to the top of Plaintiff's head which causes the gas to run into his eyes and across his face.

35. Giving a warm or hot water decontamination showers and flushing gas onto the eyes and face are common techniques to cause extreme pain.

36. As he sits on the floor outside the shower, one of the officers digs his finger into the base of Plaintiff's neck, squeezing his clavicle, another pain technique.

37. Plaintiff is placed in a restraint chair and Capt. Camacho lifts his cuffed hands up high behind his back while the others push his back forward. This is technique to cause pain by manipulating extremities and straining joints.

38. As the officers replace his hand restraints with restraint chair straps, Capt. Camacho twists Plaintiff's fingers and Plaintiff screams, "My fingers!"

39. Because the water coming down from his hair was laden with chemicals, Plaintiff pled with officers to direct water to his face without any response. Finally, Capt. Banks took the hose and sprayed water onto his face.

40. Guess and each of the officers on the cell-extraction team and the four-man

carry used deliberate surreptitious pain techniques to inflict constant pain on Plaintiff or observed others doing so and failed to intervene, though able.

41. The abuse, including abuse that was blocked from the camera, took place within the field of vision of Capt. Camacho and Capt. Banks and they would have heard Plaintiff's cries of pain and descriptions of abuse as it happened.

42. As Plaintiff is placed in a van in the restraint chair for the trip to the Main Unit, Capt. Camacho tells the driver to "turn on the AC." This is a cue to turn on the heat, which, like hot water, opens the pores increasing pain. The warm air fogs the camera lens making the inside of the van hazy like the inside of a sauna.

43. When Plaintiff gets to the Main Unit, Capt. Camacho tells him in a low voice, "Welcome to Hell." Plaintiff does not see mental health and isn't allowed to eat until the next afternoon – a tiny serving of mixed vegetables and rice.

44. Camacho tells Plaintiff "You are going on the Jenny Craig diet, dammit, I'ma make sure you starve, you gonna wish you was dead. You gonna eat air."

45. Meal containers with no food in them are called "air trays" and are used to make it appear to the cameras like inmates who are denied food are being fed.

46. Camacho said, "You are at the gates of hell, nobody cares about you so don't even try to reach out for help because your mail is not going out and your grievances are not gonna get processed and you're gonna starve. You[ll] be lucky if you get to take a shower. Welcome to Camacho's World."

47. Although Capt. Camacho instructed medical staff, in Plaintiff's presence,

6

not to let him access sick call, Plaintiff eventually was able to see medical for ongoing pain in his shoulders which were wrenched up during the four-man carry and and restraint, during the shower and the placement in the restraint chair.

48. The medical note read, "Left shoulder with visible deformity around AC joint. TTP of entire area. Extremely limited ROM 2/2 pain. . . . decreased sensation to triceps and lateral forearm."

49. When Plaintiff eventually gets an X-Ray, the report states, "Clavicular elevation suggests ligamentous injury. Consider MRI." An orthopedic specialist recommended that Plaintiff get physical therapy.

50. Plaintiff never got an MRI and the therapy was not approved.

51. Plaintiff continues to have pain and dysfunction in his left shoulder.

**B. Background**

52. The Florida Department of Corrections (FDC) holds thousands of people in solitary confinement, worsening by isolation the emotional deterioration the most vulnerable prisoners and particularly those who complain.

53. FDC also undermines free speech and due process of many inmates by threats, humiliation and physical harm for grieving prison staff misconduct.

54. FDC permits officers and medical staff to deny due process and necessary care with impunity by violating prison rules designed to protect inmates, inflicting pain gratuitously, and denying medical and mental health care.

55. The isolation of Confinement and Close Management gives free rein to

predatory guards who torment inmates through sexual humiliation, planted contraband, false charges, fictitious excuses for excessive force, contamination or denial of food, exposure to cold without bedding or clothes, and chemical agents.

56. Inmates in confinement are frequently denied showers and recreation, phone calls, visits, and education, based on fabricated charges. Mail, including legal mail and grievances are tampered with and intercepted. Searches are used to destroy property including family pictures and legal papers. Incompatible inmates are often housed together and forced to fight as retaliation and entertainment.

57. Prisoners are often frustrated in registering complaints by failure to provide grievance receipts, interception of grievances or withholding grievance responses until it is too late for an appeal (since processed grievances must be attached).

**C. Prior History of Abuse**

58. Prior to the events of July 4, 2024, there was a history of animus on the part of Capt. Camacho toward Plaintiff. He made it clear to Plaintiff that he and his staff would take every opportunity to cause Plaintiff pain and distress.

59. Plaintiff had a history of filing grievances in FDC and became the target of officers who were notorious for animus and brutality.

60. Glover responded to the brutality and animus by writing more grievances against the most brutal guards, including Capt. Camacho, when he was threatened or physically abused and frequently suffered more abuse for his efforts.

61. Many officers who worked with Columbia C.I. were told that whenever

they had trouble with Plaintiff, they should call him (Capt. Camacho) and he would take care of the problem whether it was in the Annex or Main Unit.

62. Prison staff, including medical staff, were instructed to make things as difficult as possible for Plaintiff, to surreptitiously use pain compliance techniques on Plaintiff while applying restraints or escorting Plaintiff and to contaminate or deny his meals or have the orderlies do so.

63. The abuse at Columbia C.I. was part of a pattern of abuse by a group of security officers who routinely indulge in brutal acts against prisoners in retaliation for expressions of protected speech, including grievances on abuse.

64. These groups of officers have been referred to as a "negative subculture" by use of force auditors and as a "goon squad" by long-time Florida prison inmates.

65. When Plaintiff or other inmates deemed to be "writ writers" or "snitches" were transferred, Corrections officials would call ahead to friends at the new institution to carry on the retaliatory abusive treatment.

## Causes of Action

I.  **Violation of 42 U.S.C. § 1983 for First Amendment Retaliation**

Plaintiff re-alleges the Common Allegations of Fact.

66. Plaintiff is entitled to relief against Capt. Camacho and Sgt. Guess, for acts designed to chill the exercise of speech and redress as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

67. The defendants abused and taunted Glover making clear that their threats and abuse were in reprisal for grievances and complaints he had made in the past.

68. Plaintiff does not contend that actions to enforce compliance, including gassing and cell extraction by themselves constituted constitutional violations, but rather the gratuitous violence that accompanied the actions.

69. As a direct and proximate result of these Defendants' threats and physical abuse, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations of fact above.

70. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## II.  Violation of 42 U.S.C. § 1983 for Excessive Force

Plaintiff re-alleges the Common Allegations of Fact.

71. Plaintiff is entitled to relief against Defendants Sgt. Fisher and Capt. Camacho for excessive force in violation of the Eighth Amendment as more fully described in the common allegations of fact, Section A, above.

72. Plaintiff does not contend that actions to enforce compliance with lawful orders, including gassing and cell extraction by themselves violated his rights, but rather the gratuitous surreptitious violence that accompanied the actions.

73. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as

10

described more fully in the common allegations, Section A and C, above.

74. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

III. **Violation of 42 U.S.C. § 1983 for Supervisor Liability**

Plaintiff re-alleges the Common Allegations of Fact.

75. Plaintiff is entitled to relief against Defendant Capt. Camacho and Capt. Banks, for deliberate indifference toward their subordinates' acts of excessive force without penological purpose and acts intended to chill and retaliate for protected speech and efforts at redress such that a person of ordinary firmness would refrain from fully exercising such speech, as further specified in the Common Allegation of Facts, Section A and C above.

76. As a direct and proximate result of Defendants' direct involvement, including coordination and direction of unlawful violence, Plaintiff has suffered various emotional and physical injuries, anxiety, distress and physical pain, as described more fully in Section A and C above.

77. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

IV. **Violation of 42 U.S.C. § 1983 for Failure to Intervene**

Plaintiff re-alleges the Common Allegations of Fact.

11

78. Plaintiff is entitled to relief against Capt. Camacho, Capt. Banks, Sgt. Fisher (who operated the hand-held camera during part of the events and had the ability to temper or prevent the violence by responsible video-recording) and Sgt. Guess, for failing to intervene to prevent excessive force and threats of retaliation, though able, as specified in the Common Allegation of Facts, Section A.

79. As a direct and proximate result of these defendants' failure to intervene to prevent the unlawful violence of the others, though able, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the Common Allegation of Facts, Section A above.

80. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

V. **Violation of 42 U.S.C. § 1983 for Failure to Protect**

Plaintiff re-alleges the Common Allegations of Fact.

81. Plaintiff is entitled to relief against Defendant Capt. Camacho and Sgt. Guess for failure to protect Plaintiff from harm by others through excessive force and retaliation for having previously exercised protected speech.

82. As a direct and proximate result of these defendants' failure to protect Plaintiff from harm by others, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the Common Allegations of Fact, Section A above.

83. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**VI.   Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983**

Plaintiff re-alleges the Common Allegations of Fact.

84. Plaintiff is entitled to relief against Defendants Capt. Camacho, Capt. Banks, Sgt. Fisher, and Sgt. Guess as well as medical personnel, not named, who ignored Plaintiff's sick call requests and withheld care for a time as requested by Capt. Camacho, for conspiring to violate Plaintiff's rights by acts inspired by racial animus and retaliation for speech and to carry out a criminal purpose.

85. The Defendants agreed by their acts to commit or further one or more of the unlawful acts described above, including unlawful chilling of speech, unlawful violence, the direction and coordination of unlawful violence, and failure to protect or intervene or provide care, as well as the mutual assurance that they would cooperate to cover up any investigation into the misconduct as embodied in the FDC Motto, "We Never Walk Alone."

86. As a direct and proximate result of these unlawful acts, Plaintiff suffered emotional and physical injuries, distress and pain, as described more fully above.

87. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

B. Punitive damages against individual defendants for their malicious and unconscionable actions depriving Plaintiff of his constitutional rights;

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

D. Trial by jury on all counts so triable; and

E. Any further relief this Court deems just and proper.

Respectfully submitted on 12/22/25,   *s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

*Attorney for Plaintiff*